## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case Number:

**WILLIAM SALTER, and MARIE JOSEPH,**
individually an on behalf of those similarly
situated,

      **Plaintiffs,**

**vs.**                                 **DEMAND FOR JURY TRIAL**

**PHH MORTGAGE CORP.,**

      **Defendant.**
_____/

## CLASS ACTION COMPLAINT

Plaintiffs, WILLIAM SALTER ("Salter") and MARIE JOSEPH ("Joseph") (collectively, "Plaintiffs"), both individually and on behalf of those similarly situated, by and through their undersigned counsel, bring this class action lawsuit against Defendant PHH MORTGAGE CORP., ("Defendant" or "PHH") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"), Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA"), and Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), and alleges the following:

## NATURE OF THE ACTION

1.    This is a putative class action brought under rule 23 of the Federal Rules of Civil Procedure seeking damages and injunctive relief to redress the unfair and deceptive practices committed by PHH in connection with its home mortgage loan servicing business.  PHH is the ninth largest non-bank residential mortgage servicer in the United States. PHH services home loans

according to uniform practices designed to maximize fees assessed on consumers' accounts when they are behind on their payments.

## PARTIES JURISDICTION AND VENUE

2.      Plaintiff William Salter is an individual citizen of the State of Florida, residing in Broward County.  At all times material, Slater was the owner of real property located at 7042 NW 66th Terrace, Parkland, Florida 33067.

3.      Plaintiff Marie Joseph is an individual citizen of the State of Florida, residing in Miami-Dade County.  At all times material, Joseph was the owner of real property located at 28621 SW 147th Court, Homestead, Florida 33033.

4.      Defendant PHH is a New Jersey corporation with its principal place of business located in Mt. Laurel, New Jersey.

5.      This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiffs and Defendant. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

6.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute. The Court also has supplemental jurisdiction over the FDUTPA and Section 701.04(1)(a), Florida Statutes claims under 28 U.S.C. § 1367,

because these claims are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

8.      All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

### **FDCPA STATUTORY STRUCTURE**

9.      The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

10.     The FDCPA generally prohibits debt collectors, including PHH, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

    **c.**  False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

    **d.**  False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id*. at § 1692e(2)(B);

    **e.**  "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and

3

    **f.**   "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

11.    The FDCPA provides for actual damages, classwide statutory damages, and attorneys' fees and expenses

## FCCPA STATUTORY STRUCTURE

12.    The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

13.    Like the FDCPA, the FCCPA prohibits persons, including PHH, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

14.    Specifically, the FCCPA states that no person, including PHH, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat. The FCCPA defines both "debt" and "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

15.    The FCCPA provides for actual damages, classwide statutory damages, punitive damages, and attorneys' fees and expenses.

## FDUTPA STATUTORY STRUCTURE

16.     FDUTPA is a Florida State consumer protection statute designed to protect the consuming public from those who engage in unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Fla. Stat. §501.202(2).

17.     FDUTPA imposes liability on any person or entity who engages in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…"  Fla. Stat. § 501.204(1).

18.     The remedies available under FDUTPA provide for recovery of actual damages. That recovery is "in addition to remedies otherwise available for the same conduct under state or local law."  Fla. Stat. § 501.213; *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. 2d DCA 1997).

## COMMON FACTUAL ALLEGATIONS

19.     PHH is an entity that at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiffs, as defined by 15 U.S.C § 1692a(5) and by Fla. Stat. § 559.55(7).

20.     PHH is a "debt collector" as defined in the FDCPA, § 1692a(6) and Fla Stat. § 559.55(7), in that it acquired the servicing of the loans at issue after default and uses the U.S. Mail in a business for the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due by another.

21.     PHH is a mortgage loan servicer that regularly services mortgage loans in Florida, including loans owner or assigned by Fannie Mae.

22. The loan servicer's duties and obligations are clearly filled in and defined by the Fannie Mae or Freddie Mac written Seller/Servicer Guidelines (the "Guidelines") when the loan is either serviced by the lender itself or sold to third-party servicer entities.[1]

23. In this instance, the loans at issue affecting the Plaintiffs and the Class Members are serviced by PHH; therefore, PHH is required to comply with all servicing guidelines.

24. In its role as mortgage loan servicer, PHH was responsible for preparation of items concerning the Note and Mortgage including, but not limited to, preparing and sending monthly statements, accounting for credit and debits on the Note, calculating, collecting, and disbursing escrow amounts, sending notices, overseeing the judicial foreclosure process including providing information for the same, and calculating payoff figures and transmitting payoff figures.

25. Additionally, as part of its loan servicing responsibilities, PHH regularly issues loan payoff statements, collects loan payoff payments, and process the paperwork necessary to release the mortgage lien once payment has been satisfied.

26. Payoff Statements generated by PHH are uniform in composition and form.

27. To pay off the mortgage loan being serviced by PHH, borrowers are directed to deliver the payoff amount to PHH in the form of certified funds and only certified funds. According to PHH acceptable certified funds are those received through wire transfer, cashier's check, certified bank check, title company check, money order, attorney's escrow check, MoneyGram, or Western Union.

28. As part of their instructions, PHH stresses to the borrower that wire transfers are the preferred method to receive funds. Specifically, under the heading of "How to submit payoff funds" PHH states; "Bank wire transfers are preferred. Bank wire transfer is the fastest, safest and

---

[1] Fannie Mae Servicing guidelines can be found at https://servicing-guide.fanniemae.com/; Freddie Mac Servicing Guidelines can be found at https://sf.freddiemac.com/tools-learning/sellerservicer-guide/overview

most convenient payment option. Because it is the fastest option, it may also save money on per-diem interest." C.f., Exhibit B, D.

29.     However, payment by wire transfer results in PHH charging an additional $25 to the borrower, to receive the wire, which is a fee that is not authorized by the mortgage agreement, servicing guidelines, or permitted by law.

30.     The Payoff collection letter PHH sends is designed to encourage and makes consumers believe they must incur the additional cost of the wire fee for the mortgage to be paid off properly.  Courts have routinely found actions such as this violate the FDCPA. *See e.g., Shami v. National Enterprise Systems*, No. 09-cv-722 (RRM)(VVP), 2010 WL 3824151 at *4 (E.D.N.Y. Sept. 23, 2010).

31.     PHH is fully aware and has actual knowledge that the standard mortgage loan agreements it services, including those of the Plaintiffs, do not authorize the charging of the "Bank Wire Fee."  Specifically, as servicer, PHH has direct access to and copies of the standard mortgage loan agreements for Plaintiffs and the Members of Class.  PHH as a sophisticated and experienced servicer has actual knowledge of the types and amounts of fees it is allowed to charge pursuant to both the standard mortgage loan agreement and the servicing guidelines it is bound by.

32.     In addition to the unauthorized and impermissible "Bank Wire Fee" charged, PHH includes on its uniform payoff statement a charge for "Recording Fee" in the amount of $18.50 to $19.50.  According to the payoff statement, this "Recording Fee" is the cost PHH supposedly pays to the county recorder's office to record the satisfaction of mortgage, releasing the lien from the property PHH is servicing.

33.     Florida law requires the lender or its agent to prepare and record the documents necessary to release a mortgage lien upon payoff of the mortgage. *See* Fla. Stat. § 701.04(2).

Florida law is however silent as to whether a lender is allowed or prohibited from charging the borrower for the costs associated with recording the satisfaction. In absence of direct prohibition by law, the mortgage agreement provides that the Borrower shall pay any recording costs associated with releasing the lien. However, only *actual* recording costs are allowed.

34.     Recording fees for legal documents are set by county in which the document is being recorded. In the State of Florida, the recording fee charged by the county recording office for the first page is $10.00 and each additional page recorded is $8.50.

35.     Upon information and belief, the release of mortgage document PHH prepares and records once a mortgage has been fully paid off is a one-page document that is uniform is form and content, the only differences being the specific mortgage lien being released. As this document is one page the recording fees actually charged to record the lien release is $10.00.

36.     However, upon information and belief, PHH deceptively retains $8.50 to $9.50 of the "Recording Fee" for itself as profit instead of passing on the entire amount to the third-party county recorders.

37.     The amounts PHH charges for the "Recording Fee" is deceptive, unlawful, and unauthorized and like the "Bank Wire Fee" are essentially nothing more than "processing fees" or "convenience fees" which is a violation of Florida state law.

38.     Where, like here, neither the contract creating the debt nor any law authorizes the charging of "processing fees," such as those being charged by PHH, such fees have been held to be unlawful when the debt collector retains any portion of the fee instead of passing the entire fee to the third-party vendor or processor.

39.     PHH is fully aware and has actual knowledge that the standard mortgage loan agreements it services, including those of the Plaintiffs, do not authorize the charging of excessive

fees for services that were not performed such as the "Recording Fee." Specifically, as servicer, PHH has direct access to and copies of the standard mortgage loan agreements for Plaintiffs and the Members of Class. PHH as a sophisticated and experienced servicer has actual knowledge of the types and amounts of fees it is allowed to charge pursuant to both the standard mortgage loan agreement and the servicing guidelines it is bound by. Additionally, PHH has extensive knowledge in recording mortgage lien releases and knows the documents are one page in length. Moreover, PHH has direct knowledge that the recording fees for recording a one-page document in the State of Florida is $10.00.

40. The uniform payoff statement also contains a line item of charges which are completely vague and identified only as "Recoverable Balance." The composition and the amounts comprising the charges for "Recoverable Balance" is not itemized or disclosed. There is no explanation provided concerning the ambiguously labeled "Recoverable Balance." Indeed, there is no indication that the amounts of the charges contained within the "Recoverable Balance" are estimates or were actually incurred.

41. PHH is fully aware and has actual knowledge that the standard mortgage loan agreements it services, including those of the Plaintiffs, do not authorize the charging of fees which are estimates or not actually incurred such as those contained in the "Recoverable Balance." Specifically, as servicer, PHH has direct access to and copies of the standard mortgage loan agreements for Plaintiffs and the Members of the Class. PHH as a sophisticated and experienced servicer has actual knowledge of the types and amounts of fees it is allowed to charge pursuant to both the standard mortgage loan agreement and the servicing guidelines it is bound by.

42.     PHH knows that demands for payment containing the non-itemized amorphous charge of "Recoverable Balance" is misleading as it does not give consumers, such as Plaintiffs and Class Members, the ability to knowledgably assess the validity of the claimed debt.

43.     Additionally, these demands were a direct breach of each of the following provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the standard mortgage loan agreement permitted PHH to recover "amounts disbursed" in protecting the lender's interest and rights in the standard mortgage loan agreement; (2) Paragraph 14 of the standard mortgage loan agreement prohibited PHH from charging estimated fees, unauthorized fees, or excessive fees, stating '[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; and (3) Paragraph 22 of the standard mortgage loan agreement permitted PHH to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans.

44.     Therefore, PHH also knew demanding payment of fees not yet incurred was not permitted because it violated the very mortgage loan agreements it serviced.

## FACTUAL ALLEGATIONS TO PLAINTIFFSS' TRASACTIONS

### a.  Plaintiff William Salter

45.     On or about July 21, 2005, Plaintiff Salter took out a Fannie Mae/Freddie Mac standard mortgage loan on the property located at 7042 NW 66th Terrace, Parkland, Florida 33067 ("Salter's Property") in the amount of $450,000.00.  The initial lender was IndyMac Bank. A copy of Slater's operative mortgage agreement is attached hereto as Exhibit "A."

46.     At a time prior to June 2021, Defendant PHH obtained the rights to service Plaintiff Salter's mortgage loan at issue.

47.     At all times material PHH was the servicer on Plaintiff Salter's standard mortgage loan.

48.     On or about June 2021 Plaintiff Salter made requests for payoff figures to PHH related to Salter's Property.

49.     On or about June 14, 2021, PHH knowingly, willfully, and intentionally transmitted a Payoff Statement concerning Salter's Property to Plaintiff Salter, a copy of which is attached as Exhibit "B."  The above-mentioned Payoff Statement was received by Plaintiff Salter from PHH.

50.     Within the Payoff Statement's total fees, PHH knowingly, intentionally, and willfully included charges for "Recording Fee" in the amount of $18.50, and "Bank Wire Fee" of $25.00, even though no charges had accrued as of the time of the Payoff and the PHH otherwise does not get charged a Bank Wire Fee.  The Payoff Statement also included fees that are not itemized, estimates of not actually incurred contained within a nondescript heading of "Recoverable Balance."

51.     Additionally, as stated above, the mortgage which encumbers Salter's Property does not allow for the Bank Wire Fee, and any recording fee would only be $10.00.

52.     PHH did not disclose to the Plaintiff Salter or other Class Members that these unauthorized and/or excessive fees were not allowed under their mortgage, were not authorized under law, and exceeded the actual cost to PHH by a wide margin; the difference being retained by PHH.

**b.  Plaintiff Marie Joseph**

53.     On or about October 23 2007, Plaintiff Joseph took out a Fannie Mae/Freddie Mac standard mortgage loan on the property located at 28621 SE 147th Court, Homestead, Florida

33033 ("Joseph's Property") in the amount of $223,020.00.  The initial lender was IndyMac Bank.[2]
A copy of Joseph's operative mortgage agreement is attached hereto as Exhibit "C."

54.     At a time prior to September 2021, Defendant PHH obtained the rights to service
Plaintiffs Joseph's mortgage loan at issue.

55.     At all times material PHH was the servicer on Plaintiff Joseph's standard mortgage
loan.

56.     On or about September 2021 Plaintiff Joseph made requests for payoff figures to
PHH related to Joseph's Property.

57.     On or about September 29, 2021, PHH knowingly, willfully, and intentionally
transmitted a Payoff Statement concerning Joseph's Property to Plaintiff Joseph, a copy of which
is attached as Exhibit "D."   The above-mentioned Payoff Statement was received by Plaintiff
Joseph from PHH.

58.     Within the Payoff Statement's total fees, PHH knowingly, intentionally, and
willfully included charges for "Recording Fee" in the amount of $19.50, and "Bank Wire Fee" of
$25.00, even though no charges had accrued as of the time of the Payoff and the PHH otherwise
does not get charged a Bank Wire Fee.  The Payoff Statement also included fees that are not
itemized, estimates of not actually incurred contained within a nondescript heading of
"Recoverable Balance."

59.     Additionally, as stated above, the mortgage which encumbers Joseph's Property
does not allow for the Bank Wire Fee, and any recording fee would only be $10.00.

60.     PHH did not disclose to the Plaintiff Joseph or other Class Members that these
unauthorized and/or excessive fees were not allowed under their mortgage, were not authorized

---

[2] At the time of execution of the mortgage agreement, Plaintiff Joseph was single, and signed using her maiden
name of Marie Chantel Boyer.

under law, and exceeded the actual cost to PHH by a wide margin; the difference being retained by PHH.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action both individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following "National Class":

All persons in the United States who either (a) were charged a Bank Wire Fee by PHH Mortgage Corp. in order to satisfy their mortgage, and/or (b) were charged a Bank Wire Fee and/or Recording Fee by PHH Mortgage Corp. prior to such fee having occurred or otherwise existed, and or (c) were charged for fees that were not enumerated or explained within a category identified only as Recoverable Balance.

62.     In addition to the national class, Plaintiffs bring a subclass on behalf of Florida residents pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the "Florida Class":

All persons in the State of Florida who either (a) were charged a Bank Wire Fee by PHH Mortgage Corp. in order to satisfy their mortgage, and/or (b) were charged a Bank Wire Fee and/or Recording Fee by PHH Mortgage Corp. prior to such fee having occurred or otherwise existed, and or (c) were charged for fees that were not enumerated or explained within a category identified only as Recoverable Balance.

63.     Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

64.     Excluded from the National Class and Florida Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

65.     Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action. While the exact number

of Class Members cannot be determined without discovery, Plaintiffs believe that the Class consists of at least thousands of members, the exact number of class members, upon information and belief, can be ascertained through discovery and review of Defendant's business records.

66.     The proposed Class is ascertainable because it is defined by reference to objective criteria.  In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

67.     In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiffs') are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

68.     Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs are members of the Class. Their claims are typical of all other Class Members.  All Class Members' claims are unified, as all were victims of the same collection and charging practices.

69.     Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs will adequately represent the class because they have interests in common with the proposed Class Members and they have retained attorneys who are experienced in class action litigation.

70.     Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiffs. Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

        c.  Whether PHH's "Bank Wire Fee" were reasonable given that bank wire fees were
           not authorized by law or agreement;

**d.**  Whether PHH's "Bank Wire Fee" were reasonable given that bank wire fees should have been waived or otherwise not charged;

**e.**  Whether PHH's impositions of "Bank Wire Fee" charges violate the FDCPA;

**f.**  Whether PHH's impositions of "Bank Wire Fee" charges violate Fla. Stat. § 501.201, *et seq*.;

**g.**  Whether PHH's impositions of "Recoverable Balance" charges not being enumerated are deceptive, misleading and violate the FDCPA;

**h.**  Whether PHH's impositions of "Recoverable Balance" charges not being enumerated are deceptive, misleading and violate the FCCPA;

**i.**  Whether PHH's "Recording Fee" charges were reasonable given they were in excess of actual recording charges;

**j.**  Whether PHH's impositions of "Recording Fee" charges violate the FDCPA;

**k.**  Whether PHH's impositions of "Recording Fee" charges violate Fla. Stat. § 501.201, *et seq*.;

**l.**  Whether PHH's charges of "Bank Wire Fee" and "Recording Fee" before such charges actually occurred were just and reasonable;

**m.**  Whether Plaintiffs and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof;

**n.**  Whether Plaintiffs and Class Members are entitled to statutory damages under Fla. Stat. § 559.55, *et seq*. and the amounts thereof; and

**o.**  Whether Plaintiffs and Class Members are entitled to statutory damages under Fla. Stat. § 501.201, *et seq*. and the amounts thereof.

71.     Further, the prosecution of separate actions by individual members of the class would create a risk of:

    **a.**   Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and

    **b.**   Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

72.     The class action method is appropriate for the fair and efficient prosecution of this action.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each Class Member's claims are small relative to the complexity of the litigation, and due to the financial resources of PHH, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and PHH's misconduct will proceed without remedy.

74.     Even if members of the Class could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides

the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

75.     Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

because it is clear that declaratory and injunctive relief is appropriate respecting the Class as a

whole.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 USC § 1692e

76.     Plaintiffs repeat and reallege paragraphs 1 through 60 as if fully stated herein.

77.     Plaintiffs and each Class Member were a "consumer" as defined by 15 U.S.C. §
1692a(3).

78.     The mortgage loans encumbering the properties at issue of the Plaintiffs and Class

Members, which PHH service, are debts under the FDCPA because each is "an[] obligation or

alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily

for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

79.     Additionally, the improper fees being charged and collected, in the form of the

"Bank Wire Fee", "Recording Fee", and "Recoverable Balance" are incidental to the principal

obligation and subject to the Act. 15 U.S.C. § 1692f(1).

80.     PHH is a "debt collector" of those mortgage loans as defined by 15 U.S.C. §

1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be

owed or due another, including the mortgage debts from Plaintiffs and Class Members via Payoff

Statements.  The Payoff Statements, described above, uniformly confirmed this by identifying

PHH as a debt collector. *See* Ex A, at Pg. 8.

81.     PHH engaged in direct "communications" with Plaintiffs and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for payoff of their mortgage loans, which included the improper fees stated herein.

82.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

83.     Congress created shared, substantive statutory rights of Plaintiffs and the Class Members to be privately enforced and protected under the FDCPA, which PHH has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

84.     15 U.S.C. §1692e states, in relevant part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ………
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

85.     Based on the foregoing allegations, PHH used deceptive means of collecting debts––which contained illegal fees for "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the charges may be for, incorporating them—in violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

86.     Based on the foregoing allegations, PHH violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the charges may be for, incorporating them, it falsely or in a misleading manner stated, or mispresented, the amount, character, or status of the amounts needed to payoff Plaintiffs' and Class Members' mortgage debts.

87.     Based on the foregoing allegations, PHH violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the charges may be for, it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiffs and Class Members.

88.     These violations of FDCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FDCPA rights.

89.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorneys' fees and costs under 15 U.S.C. § 1692(k).

**COUNT II**

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 USC § 1692f**

90.     Plaintiffs repeat and reallege paragraphs 1 through 60 as if fully stated herein.

91.     Plaintiffs and each Class Member were a "consumer" as defined by 15 U.S.C. § 1692a(3).

92.     The mortgage loans encumbering the property of Plaintiffs and Class Members, which PHH service, are debts under the FDCPA because each is "an[] obligation or alleged

obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

93.     Additionally, the improper fees being charged and collected, in the form of the "Bank Wire Fee", "Recording Fee", and "Recoverable Balance" are incidental to the principal obligation and subject to the Act. 15 U.S.C. § 1692f(1).

94.     PHH is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiffs and Class Members via Payoff Statements. The Payoff Statements described above uniformly confirmed this by identifying PHH as a debt collector.

95.     PHH engaged in direct "communications" with Plaintiffs and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for payoff of their mortgage loans, which included the improper fees stated herein.

96.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

97.     15 U.S.C. § 1692f states, in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

98.     Based on the foregoing allegations, PHH used unfair means of collecting amounts for "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the charges may be for,

incorporating them in violation of 15 U.S.C. § 1692f, because the amounts were not expressly authorized by Plaintiffs' and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

99.     These violations of FDCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FDCPA rights.

100.    As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorneys' fees and costs under 15 U.S.C. § 1692(k).

## COUNT III

## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT FLA. STAT. §§ 501.201, et seq.

101.    Plaintiffs repeat and reallege paragraphs 1 through 60 as if fully stated herein.

102.    Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, *et seq.*) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

103.    A practice is "deceptive" within the meaning of Florida's Deceptive and Unfair Trade Practices Act if it is likely to mislead consumers.

104.    Plaintiffs and Class Members are consumers as defined by section 501.203, Fla. Stat. PHH is engaged in trade or commerce within the meaning of the FDUTPA.

105.    PHH violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

106.    Plaintiffs and Class Members are consumers who have been aggrieved PHH's unfair and deceptive practices by paying a "Bank Wire Fee" to PHH for making a loan payoff by

wire transfer, as deceptively encouraged by PHH, in connection with their residential mortgage loans owned or serviced by PHH.

107.    Additionally, Plaintiffs and Class Members are consumers who have been aggrieved PHH's unfair and deceptive practices by paying excessive "Recording Fee" to PHH for recording the one-page satisfaction/release of mortgage lien, when such recording fees only amounted to $10.00, and PHH retained the difference as profit.

108.    The harm suffered by Plaintiffs and the Class Members was directly and proximately caused by the deceptive and unfair practices of PHH, as more fully described herein.

109.    Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and the Class Members make claims for actual damages, attorneys' fees and costs.

110.    PHH still utilizes many of the deceptive acts and practices described above and is still secretly retaining money from every "Bank Wire Fee" and "Recording Fee" it charges consumers.  Plaintiffs and the Class Members have suffered and will continue to suffer irreparable harm if PHH continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Class Members to obtain both declaratory or injunctive relief to put an end to PHH's unfair and deceptive scheme.

**COUNT IV**

**<u>VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT</u>**
**<u>FLA STAT § 559.72(9)</u>**

111.    Plaintiffs repeat and reallege paragraphs 1 through 60 as if fully stated herein.

112.    Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

113.    PHH is a "person" within the meaning of the FCCPA.

114. The mortgage loans encumbering the properties of Plaintiffs and Class Members, and being serviced by PHH, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

115. The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat.

116. The Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced and protected privately under the FCCPA, which PHH violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

117. Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

118. Based on the foregoing allegations, PHH violated Section 559.72(9), Florida Statutes, by attempting to collect a unauthorized "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the charges may be for, incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

119. Based on the foregoing allegations, PHH violated Section 559.72(9), Florida Statutes, by attempting to collect "Bank Wire Fee", excessive fees for "Recording Fee", and undisclosed and fees for "Recoverable Balance" with no itemization or description of what the

charges may be for, incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

120.    These collection practices by PHH hides the true character of the alleged debt owed by Plaintiffs and Class Members and impairs their ability to knowingly assess the validity of the alleged debt.

121.    PHH knowingly sent the Payoff Statement and attempted to collect monies from Plaintiffs and the Class Members through means that were clearly misleading on its face.

122.    These violations of FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

123.    As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

## JURY DEMAND

124.    Plaintiffs respectfully request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, both Individually and on behalf of the Class, respectfully request this Court to award against Defendant in favor of Plaintiffs and the Class all of the following:

a.  Certifying Plaintiffs' claims for class treatment under Federal Rules of Civil Procedure 23, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as counsel for the Class;

b.  For an order awarding compensatory damages on behalf of Plaintiffs and the Class in an amount to be proven at trial;

c.  For judgment for Plaintiffs and the Class on their claims in an amount to be proven at trial, for compensatory damages caused by Defendant's unfair or

deceptive practices, for treble damages, and for exemplary damages to each Class member for each violation;

d.  For an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices, and any other injunctive relief as may appear necessary and appropriate;

e.  For judgment for Plaintiffs and the Class on their federal and state law claims, in an amount to be proven at trial;

f.  For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

g.  For an order awarding Plaintiffs and the Class their attorneys' fees and costs; and

h.  Any other relief for Plaintiffs and the Class the Court deems just and proper.

Dated: November 11, 2021.

By: *Scott D. Hirsch*
Scott David Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
Email: scott@scotthirschlawgroup.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson* *Pro Hac Forthcoming*
David A. Goodwin* *Pro Hac Forthcoming*
Mary M. Nikolai* *Pro Hac Forthcoming*
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
        dgoodwin@gustafsongluek.com
        mnikolai@gustafsongluek.com

**THE ADVOCACY GROUP**
Jessica L. Kerr
Fla. Bar. No. 92810
100 S. Biscayne Blvd, Suite 300
Miami, FL 33131
Telephone: (954) 282-1858
Facsimile: (954) 282-8277
Email: *jkerr@advocacypa.com*

*Attorneys for Plaintiffs*