UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 0:21-CV-62318-CMA

**WILLIAM SALTER, and MARIE JOSEPH,**
**individually and on behalf of those similarly situated**,

      **Plaintiffs,**

vs.

**PHH MORTGAGE CORP.,**

      **Defendant.**
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, MARIE JOSEPH ("Joseph") and WILLIAM SALTER ("Salter") (Joseph and Salter are referred to collectively as "Plaintiffs"), individually and on behalf of those similarly situated, by and through their undersigned counsel, file their Memorandum in Opposition to Defendant's Motion to Dismiss, and in support thereof allege the following:

**I.  INTRODUCTION**

Plaintiffs bring this class action on behalf of themselves and others similarly situated for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") by their mortgage servicer, PHH Mortgage Corp. ("Defendant" or "PHH"), for knowingly imposing fees for services that were unauthorized (wire fees), fees that were excessive under the circumstances (recording fees in excess of the actual cost) while failing to disclose to consumers that it would

retain the amounts collected in excess of the actual costs, and fees that were misleading (non-itemized recoverable balance). PHH's debt collection efforts are misleading, unfair and deceptive. Plaintiffs' claims filed under the aforementioned statutes do not include a breach of contract claim and do not require a notice to cure. Nor are Plaintiffs' claims barred by Florida's litigation privilege as they were not performed in the context of the litigation by counsel for Defendant. Moreover, the litigation privilege is an affirmative defense and is not appropriate at this stage of litigation.

## II. LEGAL STANDARD

PHH's motion is brought under Rule 12(b)(6). Accordingly, to survive, Plaintiffs' complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Taking the facts as true, a court may only grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Kuber v. Berkshire Life Ins. Co. of America*, 423 F. Supp. 3d 1326, 1330 (S.D. Fla. 2019) (internal quote marks and citation omitted). And "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).

### III. ARGUMENT

**A. The Notice of Cure Provision Does Not Apply to Plaintiffs' Claims.**

In Counts III and IV of the Complaint, Plaintiffs assert claims under FDUTPA and the FCCPA. Defendant argues these counts should be dismissed because Plaintiffs did not satisfy the pre-suit notice and cure provision before commencing this action. However, "the notice and cure provision is circumscribed to breaches of provisions, and duties owed, within the mortgage itself." *Mills v. Select Portfolio Servicing, Inc.*, 2018 WL 5113001, Case No. 18-cv-61012-BLOOM/Valle at *5 (S.D. Fla. Oct. 19, 2018). Defendant has failed to identify a provision of the mortgage, or duty owed as a result of the mortgage, that was allegedly breached giving rise to Plaintiffs' claims. The notice and cure provision cannot apply where there are no allegations that the contract has been breached, for without a breach there is nothing for Defendant to cure. *See Id.*

Furthermore, the FCCPA implicates an independent statutory duty not arising from the mortgage contract and is therefore not subject to any notice and cure requirement in a mortgage contract. *See Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-cv-00690, 2016 WL 7243100 (M.D. Fla. Dec. 15, 2016) (where the defendant argued that the plaintiff failed to comply with the notice and cure provision of the underlying mortgage contract before filing their complaint, the Court held that "because the causes of action arise directly from alleged deceptive business practices that are prohibited by the FDCPA and FCCPA, rather than the mortgage itself . . . the notice and cure provision is inapplicable."). *See also Foster v. Green Tree Servicing, Inc.*, 2017 WL 5151354, at *3 (M.D. Fla. Nov. 3, 2017) (rejecting mortgage servicer's argument that FCCPA claims could not be brought until notice and cure provision was satisfied because such a claim is independent of a mortgage contract).

3

Here, the relevant mortgage language regarding notice and cure is nearly identical to the language in *Belcher* and *Green Tree*. Each mortgage contains language that says "until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of [this security instrument]) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action" then "[n]either Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument[.]" *See Belcher*, No. 8:15-cv-00690, [ECF 1-1:12]; *Green Tree*, 2017 WL 5151354, at *2; Compl. Ex. A pg. 11.

Based on the foregoing, the Court should adopt the *Belcher* and *Green Tree* rationale and allow Plaintiffs' FCCPA claim to proceed because it is an independent claim that arises under statute and not out of duties in the contract.

**B. All of Plaintiffs' Claims Adequately Alleged the Charges at Issue are Deceptive or Unfair**

In their Motion Defendant blanketly argues that all of Plaintiffs' claims fail because the charges at issue were not deceptive or unfair. Mot. at 6. In advancing this argument, Defendant ignores the well plead facts as alleged in Plaintiffs' complaint, applicable case law, and the standards applied when evaluating claims under the FDCPA, FCCPA, and FDUPTA.

Under FDUPTA, a "deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment." *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (Altonaga J.). "An unfair practice offends established public policy; it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id*. "In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the **net**

4

**impression** created." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018) (quoting *F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010) (emphasis in original)). Moreover, courts routinely deny motions which ask the court to find that statements are not deceptive to a reasonable consumer as a matter of law. *See, e.g., Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.*, 51 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008) (denying a motion to dismiss based on allegedly deceptive statements contained in a loan agreement); *Jankus v. Edge Inv'rs, L.P.*, 650 F. Supp. 2d 1248, 1259 (S.D. Fla. 2009) (holding that "an issue of material fact [exists] whether a reasonable consumer [under FDUTPA] would interpret this language to mean that a least a portion of the 'development fee' represented a 'pass through' charge... and whether the developer's retention of part of that fee as profit constitutes a deceptive practice"); *Bohlke v. Shearer's Foods, LLC*, No. 9:14-cv-80727-ROSENBERG/BRANNON, 2015 WL 249418, at *9 (S.D. Fla. Jan. 20, 2015) ("whether specific conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine.").

When evaluating claims for deception or misrepresentation under the FDCPA, courts in the Eleventh Circuit have adopted the "least sophisticated consumer" standard. *Alhassid v. Nationstar Mortg. LLC*, No. 1:16-CV-21211-KMM, 2016 WL 4269867, at *2 (S.D. Fla. Aug. 10, 2016), *aff'd,* 688 F. App'x 803 (11th Cir. 2017); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). "This objective standard analyzes whether a hypothetical least sophisticated consumer would be deceived or misled by the debt collector's practices." *Sanchez v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:15-CV-2714-T-30UAM, 2016 WL 3126515, at *2 (M.D. Fla. June 3, 2016). Pursuant to this standard, a communication is deceptive when "it can be reasonably [interpreted] to have two or more different meanings, one of which is inaccurate." *Melillo v. Shendell & Assocs., P.A.*, No. 11-cv-62048, 2012 WL 253205, at *5 (S.D. Fla. Jan. 26, 2012).

5

Applying this standard to a claim alleging a violation of section 1692e of the FDCPA and the question of whether a debt collection communication is deceptive or unfair, courts have held that such a question is a question of material fact for a jury to decide. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). Additionally, similar questions surrounding claims for violation section 1692f of the FDCPA have been answered by courts, and specifically this Court, as being an issue of fact. *Gomes v. Portfolio Recovery Associates, LLC*, No. 18-cv-21872-ALTONAGA/GOODMAN, 2019 WL 3890324, at *4 (S.D. Fla. May 7, 2019) (Altonaga J.) ("Whether [a Collection Letter] constitutes an 'unfair or unconscionable means to … attempt to collect a debt' for purposes of [section] 1692f presents a jury question.") (quoting *LeBlanc*, 601 F.3d. at 1200) (alterations in original).

Like the FDCPA, when courts analyze whether a practice is deceptive or unfair under the FCCPA the objective test of the least sophisticated consumer is applied. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (In assessing whether a particular communication or act is prohibited, the U.S. Court of Appeals for the Eleventh Circuit applies the least-sophisticated-debtor standard, which is an objective test); *Culver v. PHH Mortg. Corp.*, No. 6:20-CV-2292-PGB-EJK, 2021 WL 2659796, at *4 (M.D. Fla. June 28, 2021) ("When reviewing [FDCPA and FCCPA] claims, 'the inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the 'least sophisticated consumer' would have been deceived by the debt collector's conduct.'") (internal citations omitted))

       **1. The Excessive Recording Fees are Deceptive or Unfair as Applied**

Defendant makes the baseless argument that "Plaintiffs identify nothing deceptive or unfair about PHH passing along this [recording] fee as the mortgage permits." Mot. at p. 7. This argument is erroneous at best as Plaintiffs' Complaint is replete with detailed factual allegations

6

concerning the fact that Defendant charged and attempted to collect from Plaintiffs a passthrough charge represented to be a recording fee, and that, as alleged, only a portion of said fee was actually paid to a third party, with the remainder being retained - without Plaintiffs' knowledge - as profit for Defendant.  Compl. ¶¶ 32-39.

Notwithstanding the fact that these well plead allegations must be construed in a light most favorable to the Plaintiffs and that the question of how the least sophisticated consumer would view these collection communications is an issue of fact to be decided by a jury, courts faced with similar practices have found these "charges" to constitute a deceptive or unfair practice.

In *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3d DCA 2000) the Florida Third District Court of Appeals addressed the issue where a cruise line itemized a portion of passengers' ticket fares as "port charges" when in fact only a portion of the charges were paid to third parties and the cruise line kept the remainder as profit. *Id*.  The *Latman* Court found that this was specifically a deceptive practice stating, "[W]here the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUPTA."  *Id*. at 703.  Numerous courts in this District, including this Court, have applied the holding of *Latman* to similar cases alleging questions as to whether representations are deceptive with respect to passthrough charges. *See Coleman*, 328 F.Supp.3d at 1361 (applying the holding in *Latman* and determining it binding); *Cabrera v. Haims Motors, Inc.*, 288 F.Supp.3d 1315, 1324-25 (S.D. Fla. 2017) (same); *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (Altonaga J.).

The issues here with respect to the "recording fee" are exactly the same as presented in *Latmam*. It is irrelevant that the mortgage agreements at issue here allowed for the recovery of recording fees and Defendant's argument regarding same is of no moment. As plead, the mortgage

7

agreements only allowed for the passthrough charge of the *actual* amount of the recording fee paid to third parties. Accordingly, the alleged intentional overcharge of the recording fee that was represented to be going to a third party, rather than the Defendant as profit, is actionable and a deceptive and/or unfair practice.

### 2. Defendant's Charging of a Wire Fee is Deceptive or Unfair

Like its argument attempting to have the claims raised against its charging of the "recording fee", Defendant raises a similar legally flawed and factually baseless argument that the charging of the wire fee was allowed pursuant to mortgage and was not deceptive or unfair. Mot. at 7-10. As set forth above, the same standards and issues of fact preclude dismissal of Plaintiffs' claims surrounding the wire fee at this juncture. Notwithstanding, the allegations Plaintiffs have detailed in their Complaint sufficiently advance their claims that the wire fee is deceptive or unfair with respect to Plaintiffs' consumer protection claims.

As presented, Defendant conflates arguments that the wire fee was allowed under the mortgage with arguments that the wire fee was not deceptive, essentially blending the two; neither is accurate. Indeed, Defendant's reliance on *Lish v. Amerihome Mortgage Co., LLC*, No. 2:20-cv-07147, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020) is completely misplaced. First, unlike *Lish*, the Defendant here points to no portion of the loan agreement which authorizes the charging of a wire fee, and as explained below, there is no portion of the mortgage which authorizes such a fee. Moreover, contrary to the factual liberties PHH advances, that the Payoff Statement makes it clear the payment of the wire fee is optional "stating bank wire is optional method of payment and bank wire fee need not be incurred" (Mot. at 8), a plain reading of the Payoff Statement, as alleged, shows that a reasonable consumer or least sophisticated consumer would find to the contrary.

8

Indeed, as alleged in the Complaint the Payoff Statements specifically state in numerous places:

"Payoff funds should be sent by wire transfer…" Compl. Ex. B and Ex. D pg. 2.

"Payoff funds must be provided via certified funds, such as bank wire transfer,…" Compl. Ex. B and Ex. D pg. 4.

"Bank wire transfers are preferred. Bank wire transfer is the fastest, safest and most convent option. Because this is the fastest option, it may also save money on per-diem interest." Compl. Ex. B and Ex. D pg. 4.

Additionally, the total payoff amount due via bank wire transfer which includes the wire fee is the last charge on the list, giving the impression that is the total amount that needs to be paid to satisfy the debt. Notwithstanding, that the presentation and charging of the wire fee is deceptive and unfair, the charge as alleged is not allowed per the mortgage agreement and is thus actionable on this basis alone.

As stated above, Defendant points to no portion of the mortgages at issue that authorize the charging of the wire fee, as there is none. In examining the propriety of "processing" or "convenience" fees charged in connection with making mortgage payments to lenders, courts have found it sufficient to state that a legal right to payment of the fee did not exist where plaintiffs alleged that the fees were not *expressly authorized* by (1) the agreement creating the debt or (2) state statutory law. *Michael v. HOVG, LLC*, 232 F. Supp. 3d 1229, 1238 (S.D. Fla. 2017) (denying motion to dismiss and finding plaintiff stated a claim for violation of section 559.72(9) where defendant *attempted* to collect "a $5.00 convenience fee for payments made over the telephone or via Defendant's online payment portal, which Defendant was not expressly authorized by contract or statute to collect."); *see also McWhorter v. Ocwen Loan Servicing, LLC*, 2:15-CV-01831-MHH, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017) (explaining that the FDCPA "makes it unlawful for a debt collector to collect 'any amount (including any interest, fee, charge, or expense incidental

9

to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law,'" and "that 'the word 'permitted' requires that the defendants identify some state statute which 'permits,' *i.e.* authorizes or allows, in however general a fashion, the fees or charges in question.'"); *Wittman v. CB1, Inc.*, No. CV15105BLGSPWCSO, 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016) (following "the majority of courts" in finding a "transaction fee imposed for using a certain payment method" incidental to the underlying debt and therefore impermissible if not expressly authorized), *report and recommendation adopted*, No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016).

In this matter, Plaintiffs specifically allege that PHH has no legal right to seek collection of the wire fees at issue because Plaintiffs' respective mortgage agreements do not expressly provide for them. Compl., ¶¶ 29, 51, 59. Plaintiffs allege that Defendant never disclosed that the wire fees were not permitted by the Mortgage. *Id*., ¶¶ 52, 60. Plaintiffs have further alleged that Defendant knows these wire fees are unauthorized because it has the applicable mortgages in its possession, and therefore knowingly violated the law. *Id*., ¶¶ 31, 43, 44.

Plaintiffs adequately allege that Defendant had no legal right to charge the wire fee. Moreover, Plaintiffs have adequately alleged at this early pleading stage that Defendant knew that no legal right to charge the fees existed. Accordingly, Plaintiffs' Complaint more than meets the pleading requirements at this stage of the litigation.

### 3. The Non-Itemized Charge of "Recoverable Balance" is Deceptive and Misleading.

Defendant violated the FDCPA and FCCPA by demanding payment for a non-itemized charge of "Recoverable Balance." This charge is misleading because it does not provide sufficient detail for Plaintiffs to discern the character of the charge and it is an unfair attempt to collect unauthorized fees. Defendant, however, argues this was not deceptive or unfair.

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15. U.S.C. § 1692e. The Eleventh Circuit provides that "such representations are judged under the 'least sophisticated consumer' standard." *Burdick v. Bank of America*, 140 F. Supp. 3d 1325, 1330 (S.D. Fla. 2015). This standard asks whether the least sophisticated consumer would have been deceived. *Id*. Here, Defendant's issued a non-itemized charge for "Recoverable Balance" which impaired Plaintiffs' ability to determine the validity of the amounts allegedly owed.

While the FDCPA does not affirmatively require itemization of charges, the issue becomes a 'context-specific inquiry' by asking whether, "by failing to itemize, a debt collector misleadingly conveyed the amount owed or unfairly sought to collect a debt." *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1245 (M.D. Fla. 2019). Here, the failure to itemize the "Recoverable Balance" charge gives the least sophisticated consumer a misleading impression about the character of the debt. Because Plaintiffs have stated a plausible claim under the FDCPA, it should not be dismissed.

Similarly, Defendants violated the FCCPA by failing to provide a detailed breakdown or itemization of the "Recoverable Balance" charge. Under the FCCPA, it is unlawful to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). Here, Defendants sought charges identified as "Recoverable Balance" but provided no description of this charge or whether it was an estimate or an actually incurred charge. Compl. ¶ 40. PHH knows that its standard mortgage loan agreements, including Plaintiffs', do not authorize estimates or fees that were not actually incurred, such as the "Recoverable Balance." *Id*. at ¶ 41. Plaintiffs have properly pled their FCCPA claim. *See Coheley v. Lender Legal Services, LLC*, 2019 WL 6311767, Case No: 8:19-cv-185-T-27CPT, at *5 (M.D. Fla. Nov. 25, 2019)

(dismissing an FCCPA claim that fails to identify which facts support the claim and that fails to clearly allege that Defendants had actual knowledge that the debt was not legitimate, or they did not have the right to collect the debt.) As such, it should not be dismissed.

### C. The Litigation Privilege is not Applicable to Plaintiff Joseph's Claims

PHH argues that the litigation privilege in Florida bars *all* of Plaintiff Joseph's claims as a matter of law. This argument fails for numerous reasons as set forth herein. The litigation privilege in Florida provides persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings. *See Levin, Middlebrooks, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla.1994). However, not every event bearing any relation to litigation is protected by the privilege because, "[i]f the litigation privilege applied to all actions preliminary to or during judicial proceedings, an abuse of process claim would never exist, nor would a claim for malicious prosecution." *See SCI Funeral Services of Fla., Inc. v. Henry*, 839 So. 2d 702, 706 n. 4 (Fla. 3rd DCA 2002) (noting that the Florida Supreme Court has implied that malicious prosecution claims have survived the expansion of the litigation privilege). Moreover, Courts have found that the judicially created litigation privilege must be measured against the statutory right under Florida law to sue debt collectors for alleged unfair collection practices. *North Star Capital Acquisitions, LLC v. Krig*, 61 F.Supp.2d 1324, 1331 (M.D. Fla. 2009). "When viewed *in toto,* the purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts." *Id.* (quoting *Trent v. Mortgage Elec. Registration Sys., Inc.,* No. 3:06-cv-374-J-32HTS, 2007 WL 2120262, *4 (M.D. Fla. July 20, 2007), *aff'd,* 288 Fed.Appx. 571 (11th Cir.2008)).

It is also well established that Florida's litigation privilege does not bar federal or FDCPA claims. *See Pescatrice v. Orovitz,* 539 F.Supp.2d 1375, 1380 (S.D.Fla.2008); *Battle v. Gladstone*

12

*Law Grp., P.A.,* 951 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013). Moreover, the Supreme Court, as well as various Circuit Courts, have held that the FDCPA does apply to attorneys' debt-collection activity during litigation. *See Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L.Ed.2d 395 (1995) ("the FDCPA applies to attorneys who 'regularly' engage in consumer debt-collection activity, even when that activity consists of litigation."); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432 (6th Cir.2006) *cert. denied* 549 U.S. 886, 127 S.Ct. 261, 166 L.Ed.2d 151 (Oct. 2, 2006); and *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 230 (4th Cir.2007); and *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1369 (S.D. Fla. 2010).

Just as the litigation privilege cannot bar an FDCPA claim, it cannot bar an FCCPA claim. It is clear that the Florida legislature wanted to protect Florida consumers from abusive debt collection practices by enacting the FCCPA. The FCCPA was enacted to mirror the FDCPA and to provide at least as much protection for consumers as the FDCPA. *See* Fla. Stat. § 559.77(5) (when applying the provisions of the FCCPA, "great weight shall be given to the interpretations of ... the federal courts relating to the federal Fair Debt Collection Practices Act."); and Fla. Stat. § 559.77(5) (stating that "the provision which is more protective of the consumer or debtor shall prevail"). The common law litigation privilege cannot usurp the provisions enacted by the Florida legislature in the FCCPA. As the *North Star* court explained in its decision, it would eviscerate the FCCPA and allow debt collectors to avoid liability under state law for potentially abusive and harassing collection practices. *See North Star*, 611 F. Supp. 2d at 1332.

Even assuming for argument's sake that this Court finds the state litigation privilege is applicable, not every event bearing any relation to litigation is protected by the privilege and arguably the litigation privilege does not protect misleading or deceptive documents associated with litigation. *North Star,* 611 F.Supp.2d 1324 at 1330. This so because absolute immunity only

arises upon the doing of *any act required or permitted by law* in the due course of the judicial proceedings. *Fridovich v. Fridovich,* 598 So. 2d 65, 66 (Fla. 1992)) (emphasis added).

Here the communications sent to the Plaintiffs fall outside of the foreclosure action and are not protected by the litigation privilege. First, the operative Payoff Statement were not sent from an attorney, but from Defendant directly. This communication had nothing to do with the underlying foreclosure action and is not protected. The crux of the letter was to induce Plaintiffs to satisfy the mortgage debt. There is no litigation privilege that can attach to it.

Moreover, Defendant's reliance on Judge Bloom's opinion in *CWELT-2008 Series 1045, LLC v. PHH Corporation*, No. 20-cv-20334, 2020 WL 2744191, at *8 (S.D. Fla. May 27, 2020) is misplaced. In *CWELT* the court reasoned that the litigation privilege applied to the plaintiff's FDUTPA claims and was not rather an issue normally to be determined by a trier of fact as an affirmative defense, because the court reasoned it had enough of a record for the privilege to apply. *Id*. The court found that the "estoppel letter" in that action was sent during the course of the foreclosure proceeding, and the letter was directed to the plaintiff who had also been named as a defendant in the foreclosure proceeding. *Id.* Finally, the court made its determination based up the fact that the estoppel letter was sent as part of formal settlement negotiations, which the court held directly tied to the pending foreclosure litigation. *Id.* The facts of the case before this Court, as stated above, are distinctly different. "Indeed, while courts have held the litigation privilege bars claims under the FCCPA that are based on documents clearly related to the foreclosure, such as complaints and loan modification documents, 'whether a reinstatement letter is substantially related to foreclosure proceedings is less clear,'" *Mansoorian v. Brock & Scott, PLLC*, No. 8:18-CV-1876-T-33TGW, 2018 WL 6413484, at *6 (M.D. Fla. Dec. 6, 2018) (quoting *Blake v. Seterus, Inc.*, No. 16-cv-21225-JLK, 2017 WL 543223, at *3 (S.D. Fla. Feb. 9, 2017)).

14

Florida's litigation privilege is an affirmative defense. The issue of whether the privilege bars an FCCPA or FDUPTA claim should be determined only after some factual development. It is not plain from the allegations of the Complaint that the privilege applies under the circumstances alleged. *See Mansoorian*, at \*6 (the litigation privilege is an affirmative defense and therefore should ordinarily be asserted and considered after the facts are developed on summary judgment or at trial.") (internal citations omitted)). As such, a motion to dismiss is not the appropriate method to resolve this issue.

### D. PHH's Attempt to Collect Unauthorized Fees for Future Services Not Required to Satisfy the Mortgage Constitute "Trade or Commerce"

FDUTPA was enacted "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (emphasis added). Courts have been instructed to liberally construe the provisions of the statute. *See Williams v. Edelman*, 408 F.Supp.2d 1261, 1274 (S.D. Fla.2005); *see also Martorella v. Deutsche Bank Nat'l Trust Co.,* 931 F. Supp. 2d 1218, 1220 (S.D. Fla. 2013). "Trade or commerce" is defined as the advertising, soliciting, providing, *offering*, or distributing, whether by sale, rental, or otherwise, of *any* good or *service*, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity. Fla. Stat. § 501.203(8). (emphasis added*.*)

PHH alleges that mortgage servicing cannot constitute "trade or commerce" as a matter of law. Mot., p. 13, par. 2. However, Courts in this jurisdiction have ruled otherwise. In *Williams*, this Court ruled that charges by a mortgage servicer for excessive force placed insurance constituted "trade or commerce". *See Williams at 1274.* In *Martorella*, the Court also ruled that

15

unlawful debt collection by a mortgage servicer constituted "trade or commerce." *See Martorella* at 1220 (S.D. Fla. 2013). In *Alhassid v. Bank of America, NA*, the Court ruled that assessment and attempts to collect fees outside the scope of its legal entitlement by charging Plaintiffs for specific services which were unauthorized and which the mortgage servicer never performed constitute unfair and deceptive practices. See *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014). Here, PHH has requested payment by wire, but has shifted the PHH's expense of the wire fee to Plaintiffs and other consumers (on top of the fee Borrower is required to pay from its own institution) outside of the scope of the mortgage terms. Compl. ¶¶ 28-31. As stated above, PHH points to no section of the mortgage which authorizes shifting the expense for the wire fee to consumer.

Additionally, PHH erroneously refers to a Payoff Quote as loss mitigation. Loss mitigation by mortgage servicers falls under RESPA, Regulation X, 12 U.S. Code § 2605 and 12 CFR § 1024.41 respectively. Loss mitigation is defined as an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower. Instead, Payoff Requests are governed by TILA, Regulation Z which states that "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S. Code § 1639g.  Thus, PHH's claim that the payoff does not constitute "trade or commerce" because it is loss mitigation, is incorrect by definition.

To determine if a communication is an attempt to collect a debt, "Courts should look to the language of the letters in questions, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered...." *Pinson v. Albertelli Law Partners LLC*, 618 Fed.Appx. 551, 553 (11th Cir.2015).  An "implicit demand for payment [may exist] where the

16

letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting debt." *Id.* Willful debt collection violations fall within FDUTPA's broad definition of "trade or commerce." *See Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 812. (Fla.Dist.Ct.App. 2002). Additionally, willful attempts to collect a debt that is not owed in a manner that is unconscionable, deceptive or unfair are subject to FDUTPA. *See Losure v. Capital One Servs., Inc.*, 2006 WL 166520, *3 (M.D.Fla. Jan. 23, 2006); A third-party debt collector is subject to FDUTPA. *Id.*

PHH's reliance on *CWELT* is misplaced. This case is distinguishable from *CWELT* in two significant ways. Plaintiffs are borrowers, the payoff quotes were sent from PHH and not PHH's counsel, factors the Court specifically referenced when determining that the payoff quote in *CWELT* did not constitute "trade or commerce." *CWELT-2008 Series 1045 LLC v. PHH Corp.*, 1:20-cv-20334, 2020 WL 2744191, at *9, 14 (S.D. Fla. May 27, 2020). Here, PHH knowingly imposed fees for services that were unauthorized (wire fees) and were excessive under the circumstances (recording fees). Comp. ¶¶ 28-39. PHH is a debt collector that attempted to collect fees for services that were not authorized by the mortgage (wire fees) and erroneously excessive (recording fees in excess of actual cost). Compl. Ex. B & D. The explicit language of the payoff quotes state the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting debt. *Id.*

The mere act of sending a payoff letter (like the act of force-placing insurance or sending a mortgage statement) does not in and of itself constitute "trade or commerce," but PHH knowingly imposing fees for services that were unauthorized (wire fees), fees that were excessive under the

17

circumstances (recording fees in excess of the actual cost) while failing to disclose to consumers that it would retain the amounts collected in excess of the actual costs, and fees that were misleading (non-itemized recoverable balance), constitute unfair and deceptive practices. Compl., ¶¶ 28-34. Specifically, charging Plaintiffs and other consumers for "recording fees" in the amount of thirty-six ($36.00) dollars when the recording fee in Florida is only ten ($10.00) dollars while failing to disclose its intent to retain the excessive amount, is misleading, deceptive, unfair and unconscionable. PHH's charges for "wire fees" were also deceptive, unfair and unconscionable. If PHH prefers the transaction to be completed via a wire fee, a fee not authorized by the mortgage, PHH should bear the expense of the wire fee. (An additional wire fee is imposed by most consumer banks for their end of the transaction as well.) While related to PHH's mortgage servicing rights, the collection of wire fees constitutes a separate offer or provision of services within the meaning of FDUTPA. *See Alhassid at 1324.* PHH knowingly imposed fees for services that were unauthorized (wire fees) and were excessive under the circumstances (recording fees in excess of actual cost). Comp. ¶¶ 28-39. PHH is a debt collector that attempted to collect fees for services that were not authorized by the mortgage (wire fees) and erroneously excessive (recording fees in excess of actual cost) PHH's actions support Plaintiffs' claim under the unfairness prong of the FDUTPA. See *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269-74 (S.D. Fla. 2006); *see also Latman v. Costa Cruise Lines*, N.V., 758 So.2d 699 (Fla. Dist. Ct. App. 2000) (reversing trial court's order denying class certification where plaintiff alleged violations of FDUTPA because of the cruise line's alleged failure to disclose that it would retain portions of the port charges).

      The unauthorized activities complained of by Plaintiffs come within the scope of FDUTPA. Plaintiffs have sufficiently pleaded a claim under FDUTPA to survive a Motion to Dismiss.

## IV. CONCLUSION

For all the forgoing reasons, PHH's Motion to Dismiss Plaintiffs' Class Action Complaint should be denied.

Dated: January 12, 2022.

Respectfully submitted,

| | |
|---|---|
| By: *Scott D. Hirsch*<br>Scott David Hirsch<br>**SCOTT HIRSCH LAW GROUP**<br>Fla. Bar No. 50833<br>6810 N. State Road 7<br>Coconut Creek, FL 33073<br>Tel: (561) 569-7062<br>Email: scott@scotthirschlawgroup.com | |
| **THE ADVOCACY GROUP**<br>Jessica L. Kerr<br>Fla. Bar. No. 92810<br>100 S. Biscayne Blvd, Suite 300<br>Miami, FL 33131<br>Telephone: (954) 282-1858<br>Facsimile: (954) 282-8277<br>Email: *jkerr@advocacypa.com* | **GUSTAFSON GLUEK PLLC**<br>Daniel E. Gustafson, Esq.<br>David A. Goodwin, Esq.<br>Mary M. Nikolai, Esq.<br>Canadian Pacific Plaza<br>120 South 6th Street, Ste. 2600<br>Minneapolis, MN 55402<br>dgustafson@gustafsongluek.com<br>dgoodwin@gustafsongluek.com<br>mnikolai@gustafsongluek.com |

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record in this action via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jessica L. Kerr*_____
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810