## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-62318-CIV-ALTONAGA/Strauss

**WILLIAM SALTER**, *et al.*,

      Plaintiffs,

v.

**PHH MORTGAGE CORP.**,

      Defendant.

_____/

### <u>ORDER</u>

    **THIS CAUSE** came before the Court on Defendant, PHH Mortgage Corporation's Motion

to Dismiss [ECF No. 20], filed on December 22, 2021.  Plaintiffs, William Salter and Marie Joseph,

filed a Response [ECF No. 25]; to which Defendant filed a Reply [ECF No. 26].  The Court has

carefully considered the Complaint [ECF No. 1], the parties' written submissions, and applicable

law.  For the following reasons, the Motion is granted in part and denied in part.

### I.  BACKGROUND

    This is a putative class action brought against Defendant, a non-bank residential mortgage

servicer.  (*See* Compl. ¶ 1).  Plaintiffs own homes in Florida that are subject to identical Mortgages

[ECF Nos. 1-3 & 1-5] [1] serviced by Defendant.  (*See* Compl. ¶¶ 45–47; 53–55).

    The Mortgages contain "Notice of Grievance" provisions requiring Plaintiffs to provide

notice of a grievance and an opportunity to cure the grievance before filing suit.  The provision

states:

---

[1] The Federal Rules of Civil Procedure "provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."  *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (alteration added; citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).  The Mortgages are attached to the Complaint.

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this [Mortgage] or that alleges that the other party has breached any provision of, or any duty owed by reason of, this [Mortgage], until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Mortgages ¶ 20 (alterations added)).[2]

Defendant services home loans according to uniform practices (*see* Compl. ¶ 1), including the issuance of uniform Payoff Statements [ECF Nos. 1-4 & 1-6] that inform consumers about how much they owe Defendant (*see* Compl. ¶¶ 25–26; Payoff Statements 3).[3]  These Payoff Statements include three allegedly improper fees: (1) a "Bank Wire Fee" (*e.g.*, Compl. ¶¶ 79, 93, 106, 118 (quotation marks omitted)); (2) a "Recording Fee" (*e.g.*, *id.* ¶¶ 79, 93, 107, 118 (quotation marks omitted)); and (3) a "Recoverable Balance" (*e.g.*, *id.* ¶¶ 79, 93, 118 (quotation marks omitted)).

Plaintiffs seek damages and injunctive relief to redress Defendant's allegedly unfair and deceptive practices.  (*See id.* ¶ 1).  They assert four claims: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e (Count I); violation of the FDCPA, 15 U.S.C. § 1692f (Count II); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.* (Count III); and violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(9) (Count IV).  (*See* Compl. ¶¶ 76–123).  Defendant seeks dismissal of the Complaint for failure to state claims for relief.  (*See generally* Mot.).

---

[2] The Mortgages define each of the Plaintiffs as "Borrower" (Mortgages ¶ (B)), and Defendant's predecessor in interest as "Lender" (*id.* ¶ (D); *see also* Compl. ¶¶ 45–46, 53–54).

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III.  DISCUSSION

Defendant moves for dismissal on four grounds: (1) Plaintiffs failed to comply with the mandatory notice-and-cure provision contained in the Mortgages; (2) Florida's litigation privilege

bars Joseph's claims; (3) the fees were not deceptive or unfair; and (4) Plaintiffs' FDUTPA claims fail because Defendant's servicing activities do not constitute trade or commerce.  (*See* Mot. 1–2).  After examining the first two grounds in turn, the Court analyzes the third and fourth grounds together.

     ***The Notice of Grievance provision.***  Defendant maintains the Court should dismiss the Complaint in its entirety because Plaintiffs allege no facts showing compliance with the condition precedent contained in the Notice of Grievance.  (*See* Mot. 3–6; Reply 1–3).  Plaintiffs insist the provision cannot apply to their claims because "there are no allegations that the contract has been breached[.]"[4]  (Resp. 3 (alteration added)).  While Plaintiffs are wrong — they do plead the Mortgages have been breached — the Court cannot dismiss the Complaint under Rule 12(b)(6) because of an ostensible failure to meet a condition precedent.

     The notice-and-cure provision of a mortgage "bars a plaintiff's claims where it applies by its terms to the action."  *Kurzban v. Specialized Loan Servicing, LLC*, No. 17-cv-20713, 2018 WL 1570370, at *2 (S.D. Fla. Mar. 30, 2018) (alteration adopted; quotation marks and citations omitted).  And "[c]ourts in this [D]istrict consistently hold that a notice-and-cure provision in a mortgage applies to actions against a servicer."  *Id.* at *3 (alterations added; collecting cases).

     Whether Plaintiffs' claims are subject to the Notice of Grievance provision depends on whether the claims "arise[] from [Defendant]'s actions pursuant to th[e Mortgages] or . . . allege[] that [Defendant] has breached any provision of, or any duty owed by reason of, th[e Mortgages.]" (Mortgages ¶ 20 (alterations added)).  The Court examines the terms of the Mortgages and whether the claims made here are subject to the Notice of Grievance provisions.

---

[4] Plaintiffs inexplicably frame Defendant's notice-and-cure argument as only applying to Counts III and IV (*see* Resp. 3); yet the Motion clearly states Defendant seeks dismissal of "Plaintiffs' [C]omplaint in its entirety" on this basis (Mot. 6 (alteration added)).  Nevertheless, the Court construes Plaintiffs' counterarguments as applying to each Count.

First, the Bank Wire Fee.  Plaintiffs allege that when consumers make mortgage payments by wire transfer, Defendant "charg[es] an additional $25 to the borrower, to receive the wire, which is a fee that is *not authorized by the mortgage agreement*[.]"  (Compl. ¶ 29 (alterations and emphasis added)).  Plaintiffs also allege that Defendant "is fully aware and has actual knowledge that *the standard mortgage loan agreements it services . . . do not authorize* the charging of the 'Bank Wire Fee.'"  (*Id.* ¶ 31 (alteration and emphases added)).

Elsewhere in the Complaint, Plaintiffs cite Paragraph 14 of the Mortgages (*see id.* ¶ 43), which states: "[T]he absence of express authority in this [Mortgage] to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  *Lender may not charge fees that are expressly prohibited by this [Mortgage] or by Applicable Law*."  (Mortgages ¶ 14 (alterations and emphasis added)).  Plaintiffs claim that Paragraph 14 "prohibit[s Defendant] from charging estimated fees, unauthorized fees, or excessive fees[.]"  (Compl. ¶ 43 (alterations added)).  Thus, Plaintiffs' claims arising from the allegedly unauthorized Bank Wire Fee "clearly relate to the Mortgage[s]" and are subject to the Notice of Grievance provision.  *Kurzban*, 2018 WL 1570370, at *2 (alteration added).

Second, the Recording Fee.  In Florida, the recording fee charged by the county recording office for the first page of a document is $10.00, and each additional page recorded is $8.50.  (*See* Compl. ¶ 34).  Plaintiffs assert the release-of-mortgage document Defendant prepares and records once a consumer has fully paid off a mortgage is a uniform one-page document, but Defendant charges consumers for the cost of a two-page document.  (*See id.* ¶¶ 35–36).  Plaintiffs claim that Defendant "deceptively retains $8.50 to $9.50 of the Recording Fee for itself as profit instead of passing on the entire amount to the third-party county recorders."  (*Id.* ¶ 36 (quotation marks omitted)).

Plaintiffs further allege that Defendant "is fully aware and has actual knowledge that *the standard mortgage loan agreements it services . . . do not authorize the charging of excessive fees for services that were not performed such as the 'Recording Fee.'*" (*Id.* ¶ 39 (alteration and emphasis added)).  Given this allegation, Plaintiffs' claims related to the Recording Fee clearly suffer from the same problem as the Bank Wire Fee because the imposition of unauthorized fees is prohibited by Paragraph 14 of the Mortgages.

What is more, the alleged overcharging of the Recording Fee would be a direct violation of Paragraph 23 of the Mortgages, which states: "Lender may charge Borrower a fee for releasing this [Mortgage], *but only if the fee is paid to a third party for services rendered* and the charging of the fee is permitted under Applicable Law." (Mortgages ¶ 23 (alteration and emphasis added)). There is no doubt that the Notice of Grievance provision applies to Plaintiffs' claims related to the Recording Fee.

Third, and finally, the Recoverable Balance.  Plaintiffs allege that Defendant's uniform Payoff Statement "contains a line item of charges which are completely vague and identified only as 'Recoverable Balance.'" (Compl. ¶ 40).  Plaintiffs assert that Defendant "is fully aware and has actual knowledge that *the standard mortgage loan agreements it services . . . do not authorize the charging of fees which are estimates or not actually incurred such as those contained in the 'Recoverable Balance.'*" (*Id.* ¶ 41 (alteration and emphasis added)).  Again, Plaintiffs' claims are subject to the Notice of Grievance provision because they relate to Defendant's duties owed under Paragraph 14 of the Mortgages.

Leaving no room for doubt, Plaintiffs explicitly allege the charging of the non-itemized Recoverable Balance breaches several Mortgage provisions:

> [T]hese demands were a direct breach of each of the following provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the

standard mortgage loan agreement permitted [Defendant] to recover "amounts disbursed" in protecting the lender's interest and rights in the standard mortgage loan agreement; (2) Paragraph 14 of the standard excessive fees, stating '[l]ender may not charge fees that are expressly prohibited in this [Mortgage] or by Applicable Law"; and (3) Paragraph 22 of the standard mortgage loan agreement permitted [Defendant] to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans.

[] Therefore, [Defendant] also knew demanding payment of fees not yet incurred *was not permitted because it violated the very mortgage loan agreements it serviced.*

(*Id.* ¶¶ 43–44 (alterations and emphasis added; third alteration in original)).

Plaintiffs' contention that the Notice of Grievance provision cannot apply because "there are no allegations that the contract has been breached" (Resp. 3), is baseless.  Plaintiffs explicitly allege "a direct breach" of several specific Mortgage provisions (Compl. ¶¶ 43–44) and incorporate that allegation into each count of the Complaint (*see id.* ¶¶ 76, 90, 101, 111).

Nonetheless, dismissal based on the Notice of Grievance provision is not warranted.  Under Federal Rule of Civil Procedure 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  *Id.* (alteration added).  Defendant clearly seeks dismissal of this suit based on Plaintiffs' ostensible failures to comply with a condition precedent.  (*See* Mot. 5–6 ("Plaintiffs were required to comply with their mortgages by providing [Defendant] notice and an opportunity to cure before filing suit based on those alleged charges." (alteration added))).  While Plaintiffs do not reference this point in their Response, Paragraph 8 of their Complaint satisfies Rule 9.  (*See* Compl. ¶ 8 ("All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.")).  Consequently, "it would be improper for the Court to decide whether the conditions precedent have in fact been satisfied at this stage."  *Culver v. PHH Mortg. Corp.*, No. 6:20-cv-2292, 2021 WL 2659796, at *2 (M.D. Fla. June 28, 2021); *see also Tesoro Pres. Prop. Owners*

*Ass'n, Inc. v. Fifth Third Mortg. Co.*, No. 12-14094-Civ, 2012 WL 13015009, at *2 (S.D. Fla. Aug. 20, 2012).[5]

    ***The litigation privilege.***    Although Salter and Joseph's individual allegations are essentially identical (*compare* Compl. ¶¶ 45–52, *with id.* ¶¶ 53–60), Defendant argues only that Joseph's claims are barred by Florida's litigation privilege (*see* Mot. 11–13; Reply 8–9).  To prove this, Defendant requests the Court take judicial notice of a docket in a state-court foreclosure action pending between Joseph and her lender.  (*See* Mot. 13 n.5).  Defendant insists all of Joseph's claims must be dismissed because it sent the Payoff Statement to her during the state foreclosure proceedings.  But merely establishing there were pending foreclosure proceedings when the Payoff Statement was sent does not conclusively establish the litigation privilege applies.

    The litigation immunity privilege is an affirmative defense.  *See N. Star Cap. Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1329 (M.D. Fla. 2009) (citation omitted).  Still, it "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004) (quotation marks and citation omitted).  The Florida litigation privilege "affords absolute immunity for acts occurring during the course of juridical proceedings."  *Id.* at 1274.  But not every event bearing any relation to litigation is protected by the privilege.  If the privilege applied to all actions preliminary to or during judicial

---

[5] The Court recognizes the line of cases supporting Defendant's argument for dismissal at this stage and notes that none of them discusses Rule 9.  *See generally Kurzban*, 2018 WL 1570370 at *1, *3; *Sandoval v. Ronald R. Wolfe & Assocs., P.L.*, No. 16-61856-Civ, 2017 WL 244111, at *3 (S.D. Fla. Jan. 19, 2017), *amended by* 2017 WL 3724584 (S.D. Fla. Mar. 10, 2017); *Charles v. Deutsche Bank Nat'l Tr. Co.*, No. 15-cv-21826, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016); *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, No. 15-cv-61972, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), *order clarified by* 2016 WL 3163075 (S.D. Fla. Mar. 18, 2016); *Hill v. Nationstar Mortg. LLC*, No. 15-60106-Civ, 2015 WL 4478061, at *1–3 (S.D. Fla. July 2, 2015).  In any event, Plaintiffs would be well-advised to look into this issue; the Court will likely have to address their compliance with conditions precedent on a Rule 12(c) or Rule 56 motion.

proceedings, an abuse of process or malicious prosecution claim, for example, would never exist.  *See N. Star Cap. Acquisitions*, 611 F. Supp. 2d at 1330 (citation omitted); *see also Suchite v. Kleppin*, No. 10-21166-Civ, 2011 WL 1814665, at *3 (S.D. Fla. Apr. 29, 2011) (noting the litigation privilege "does not bar abuse of process claims brought based upon actions taken outside the context of the judicial proceeding, such as actions taken before the litigation began or actions extrinsic to the litigation" (citation omitted)).

Nothing in the Complaint discusses Joseph's pending foreclosure proceedings, let alone connects the Payoff Statement to it.  Defendant contends that because Joseph requested the Payoff Statement under section 701.04, Florida Statutes, it is necessarily related to the foreclosure proceedings.  (*See* Reply 9).  But section 701.04 is not inherently related to foreclosure proceedings — it simply provides the procedure for how a mortgagor can request information as to how much she owes under the loan and the procedure for satisfying the loan.  *See generally* Fla. Stat. § 701.04.  By way of example, Salter also apparently requested a Payoff Statement under section 701.04, yet Defendant only asserts the litigation privilege against Joseph.

The differences between this case and Defendant's cited authority are revealing.  (*See* Mot. 12–13 (citing *CWELT-2008 Series 1045 LLC v. PHH Corp.*, No. 20-cv-20334, 2020 WL 2744191, at *8 (S.D. Fla. May 27, 2020))).  In *CWELT-2008 Series 1045 LLC*, the court dismissed the plaintiff's claims arising from an estoppel letter sent by the defendant under section 701.04.  2020 WL 2744191, at *8–9.  Importantly, the complaint alleged the estoppel letter was sent as part of settlement discussions between attorneys for the plaintiffs and for the defendant in the underlying foreclosure action.  *Id.* at *8.  The Complaint here makes no such mention of a pending foreclosure action, let alone any settlement discussions.

This case is thus more like *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235 (M.D. Fla. 2019). While the complaint in *Meyer* alleged the defendants sent a reinstatement letter in response to the plaintiff's payoff request, that allegation did not affirmatively and clearly show the litigation privilege applied to the FCCPA claims. *Id.* at 1242 (alterations added; citations omitted). Stated differently, on the face of the complaint there was no connection between the reinstatement letter and the pending, related foreclosure action. Consequently, the court found consideration of the privilege "premature" at the motion-to-dismiss stage. *Id.* The Court is likewise unconvinced it can make a conclusive determination that the litigation privilege applies at this stage.

***The statutory frameworks.*** Defendant argues this case should be dismissed because Plaintiffs fail to state claims under the FDCPA, the FCCPA, and the FDUTPA. (*See* Mot. 6 (citing 15 U.S.C. § 1692e(2)(A) (prohibiting "false, deceptive, or misleading representation[s]" regarding "the character, amount, or legal status of any debt" (alteration added)); 15 U.S.C. § 1692f(1) (prohibiting "unfair or unconscionable" debt collection including unauthorized fees); Fla. Stat. § 559.72(9) (prohibiting debt collection when the collector "knows that the debt is not legitimate"); Fla. Stat. § 501.204(1) (prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce"))).

*The FDCPA.* To prevail on a claim under the FDCPA, a plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."[6] *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1235 (S.D. Fla. 2015) (quotation marks and citation omitted*); see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). Courts apply the "least-

---

[6] Defendant does not dispute the first and second elements. The only element in dispute is whether Defendant engaged in any practice prohibited by the FDCPA.

CASE NO. 21-62318-CR-ALTONAGA/Strauss

sophisticated consumer" test in evaluating whether a debt collector's communication violates section 1692e or 1692f of the FDCPA. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193–94, 1200 (11th Cir. 2010) (footnote call number, quotation marks, and citation omitted).

"The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the 'least sophisticated consumer' would have been deceived by the debt collector's conduct." *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 781 (11th Cir. 2019) (quotation marks and citations omitted). "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Leblanc*, 601 F.3d at 1194 (quotation marks and citation omitted). The test also has an objective component: "while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.* (alterations adopted; quotation marks and citations omitted).

*The FCCPA.* "The FCCPA is a Florida state analogue to the federal FDCPA, and both statutes are intended to eliminate abusive practices used by debt collectors." *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1286 (M.D. Fla. 2017) (footnote call number, quotation marks, and citations omitted).

The FCCPA "requires substantially the same elements as the FDCPA to state a claim for relief." *Culver*, 2021 WL 2659796, at *4 (citation omitted). "To establish a violation under section 559.72(9) of the FCCPA, it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016) (quotation marks and citation omitted).

*The FDUTPA*.   "The FDUTPA is designed '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (alteration in original; quoting Fla. Stat. § 501.202(2)).

To state a FDUTPA claim, a plaintiff must allege three basic elements: "(1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014) (citations omitted).  The "FDUTPA defines 'trade or commerce' as 'the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated.'"  *Id.* (quoting Fla. Stat. § 501.203(8)).  A deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment.  *See Kenneth F. Hackett & Assocs., Inc.*, 744 F. Supp. 2d at 1312 (citations omitted). An unfair practice offends established public policy; it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *See id.* (citations omitted).

The Court examines each fee under the relevant statutory frameworks.

*The Recording Fee.*  Defendant contends the Recording Fee is authorized and not excessive because the Mortgages allow Defendant to charge Plaintiffs for any recordation costs so long as "the fee is paid to a third party for services rendered[.]"  (Reply 3 (alteration added; quoting Mortgages ¶ 23)).  But Plaintiffs are claiming Defendant charges in *excess* of any third-party services rendered and keeps a portion "for itself as profit instead of passing on the entire amount to the third-party county recorders."  (Compl. ¶ 36).  Taking Plaintiffs' allegation as true, such a

practice would be a deceptive representation of the amount of a debt, in violation of 15 U.S.C. section 1692e; an unfair or unconscionable means of attempting to collect a debt, in violation of 15 U.S.C. section 1692f; and the assertion of a legal right Defendant knows is not legitimate, in violation of section 559.72(9), Florida Statutes.

Defendant also insists that Plaintiffs "do not — and could not — allege any such overcharge because Plaintiffs indisputably never paid off their loans, [Defendant] never recorded a release of Plaintiffs' mortgages, and [Defendant] thus never sought to pass a recording charge along to Plaintiffs."  (Reply 3 (alterations added; emphasis omitted)).  This argument is without merit.

"The FDCPA and FCCPA . . . impose liability when an entity is *attempting* to collect a debt." *Culver*, 2021 WL 2659796, at *4 (alteration and emphasis added; citations omitted).  As pleaded, Defendant routinely includes fees of $18.50 to $19.50 in each Payoff Statement even though the county recording office only charges $10.00 for Defendant to record a uniform one-page release-of-mortgage document.  (*See* Compl. ¶¶ 32, 34–36).  Although the Payoff Statement states the "Recording Fee will be assessed in the amount of the actual cost which may vary at the time of recording" (Payoff Statements 4), if the release-of-mortgage document is always one page, then it appears as though Defendant consistently — and knowingly — overrepresents the amount due for the Recording Fee on each Payoff Statement (*see id.*).  Plaintiffs' FDCPA claims survive because the least sophisticated consumer would likely not know that the most the Recording Fee would actually cost is $10.00.  *See LeBlanc*, 601 F.3d at 1193–94, 1200.  And their FCCPA claims are sound because Defendant is asserting a legal right to receive payment it knows is in excess of what it will actually pass through to the county recording office.  *See Daniel*, 159 F. Supp. 3d at 1336.

Further, because Plaintiffs successfully plead violations of the FDCPA and FCCPA, their FDUTPA claim survives as well. A *per se* FDUTPA violation may be implied by another statutory violation if that statute proscribes "unconscionable, deceptive, or unfair acts or practices[.]" *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1306 (S.D. Fla. 2018) (alteration added; citations omitted). Whether a statute is a valid FDUTPA predicate, then, depends on the specific conduct prohibited by the statute.

Of course, Plaintiffs' FDCPA claims are premised on deceptive and unfair conduct. *See* 15 U.S.C. § 1692e (prohibiting "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" (alteration added)); 15 U.S.C. § 1692f (prohibiting the use of "unfair or unconscionable means" in collecting or attempting to collect any debt). Plaintiffs' FCCPA claim is premised on the second clause of section 559.72(9), Florida Statutes: "In collecting consumer debts, no person shall . . . assert the existence of some . . . legal right when such person knows that the right does not exist." *Id.* (alterations added). Knowingly asserting a nonexistent legal right in the course of debt collection is "unconscionable, deceptive, [and] unfair[;]" therefore, Plaintiffs' FCCPA claim also serves as a valid FDUTPA predicate. *State Farm Mut. Auto. Ins.*, 315 F. Supp. 3d at 1306 (alterations added; citations omitted); *see also Jones v. TT of Longwood, Inc.*, No. 6:06-cv-651, 2006 WL 2789140, at *6 (M.D. Fla. Sept. 26, 2006) (concluding that assertion of a nonexistent legal right during debt collection under the FCCPA would be a valid FDUTPA predicate).

Finally, Defendant's argument that the conduct at issue does not involve "trade or commerce" as required to state a FDUTPA claim is unpersuasive. (*See* Mot. 13–14; Reply 9–10). True, most courts discussing the issue have held that, generally, loan or mortgage servicing and debt collection are not trade or commerce under the FDUTPA. *See Cornette v. I.C. Sys., Inc.*, 280

F. Supp. 3d 1362, 1373 (S.D. Fla. 2017) (collecting cases). But there are exceptions, such as when the loan servicer assesses or seeks to collect fees "outside the scope of its legal entitlement" or "billed . . . for specific services which were unauthorized and which [the loan servicer] never performed." *Alhassid*, 60 F. Supp. 3d at 1324 (alterations added; emphasis omitted). Such is the case here.

In short, each of Plaintiffs' claims related to the allegedly excessive Recording Fee survive.

*The Bank Wire Fee.* Defendant maintains there is nothing deceptive or unfair about the $25 fee it charges for using its bank-wire service. (*See* Mot. 7–10; Reply 4–7). The Court agrees.

On the introductory page of the Payoff Statement, Defendant provides eight different accepted methods of payment: "Payoff funds should be sent by wire transfer, cashier's check, certified bank check, title company check, money order, attorney's escrow check, MoneyGram or Western Union." (Payoff Statements 3). In a later section titled, "PAYOFF REQUIREMENTS AND CONDITIONS[,]" Defendant reiterates that the same eight methods of payment are acceptable: "Payoff funds must be provided via certified funds, such as bank wire transfer, cashier's check, certified bank check, title company check, money order, attorney's escrow check, MoneyGram or Western Union." (*Id.* 5 (alteration added)).

In the next section, titled, "HOW TO SUBMIT PAYOFF FUNDS[,]" Defendant states: "Bank wire transfers are preferred. Bank wire transfer is the fastest, safest and most convenient payment option. Because this is the fastest option, it may also save money on per-diem interest." (*Id.* (alteration added)). Defendant then explains how to submit a bank wire transfer before explaining how to pay using other methods such as mailing certified funds, checks, or money orders. (*See id.*).

On the page breaking down the total amount Plaintiffs owe, Defendant includes a line item titled, "TOTAL PAYOFF AMOUNT DUE[,]" and another line item below titled, "TOTAL PAYOFF AMOUNT DUE VIA BANK WIRE TRANSFER[.]" (*Id.* 4 (alterations added)). The second line item clearly adds a line item for the optional $25.00 Bank Wire Fee. (*See id.*).

Plaintiffs' claim that "a reasonable consumer or least sophisticated consumer would find" the bank-wire transfer not optional is wholly unsupported. (Resp. 8). The Payoff Statement makes it abundantly clear that while a bank-wire transfer is preferred, it is just one option out of eight. Simply listing the bank-wire fee as the first item in the list of eight options is not misleading, as Plaintiffs suggest. (*See id.* 9).

The Payoff Statement even explains how to submit payment using the other options on the same page where it says bank-wire transfers are preferred.  On the payoff breakdown page, Defendant clearly separates the total amount due if the consumer does not use the bank-wire transfer method from the total amount due if the consumer chooses to use the optional bank-wire transfer method.  It is hard to imagine — even under a "bizarre or idiosyncratic interpretation[]" of the Payoff Statement — that any consumer would believe she could only submit payment via the bank-wire transfer method. *Leblanc*, 601 F.3d at 1194 (alteration added; quotation marks and citations omitted).  Altogether, Plaintiffs' FDCPA claims arising from the Bank Wire Fee fail under the objective component of the least sophisticated consumer test. *See id.* at 1193–94, 1200.

There also is no indication that Defendant is asserting a nonexistent legal right in violation of the FCCPA.  Plaintiffs argue the absence of express authority in the Mortgages to charge the Bank Wire Fee renders their FCCPA claim plausible.  (*See* Resp. 8–9).  Yet, the Mortgages explicitly state "the absence of express authority in this [Mortgage] to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." (Mortgages ¶ 14

(alteration added)).  And nothing in the Mortgages "expressly prohibit[s]" the charging of a convenience fee for an optional service.  (*Id.* (alteration added)).  Because Plaintiffs have not provided any persuasive argument as to why the Bank Wire Fee is prohibited, their FCCPA claim fails.

The Court notes there is an inter- and intra-District split as to whether claims arising from convenience fees charged by loan servicers are ever viable under the FDCPA or FCCPA.  Some courts have taken the stance that convenience fees are not a debt owed another and are therefore not actionable under either act.  *See Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50, 2020 WL 4428470, at *2 (M.D. Fla. July 31, 2020) (citing *e.g.*, *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244 (M.D. Fla. 2020); collecting other cases).  Others have come to the opposite conclusion and have denied dismissal of FDCPA claims and/or FCCPA claims stemming from convenience fees.  *See id.* (citing *e.g.*, *Webster v. Ocwen Loan Servicing, LLC*, No. 20-cv-60117 (S.D. Fla. Apr. 30, 2020); collecting other cases).  The Court need not wade into this issue because it is unconvinced there is any deceptive or unfair conduct under the plain language of the Payoff Statement.

Finally, because there are no predicate statutory violations, and because there is nothing unfair or deceptive about the optional Bank Wire Fee, Plaintiffs' FDUTPA claim fails.  *See State Farm Mut. Auto. Ins. Co.*, 315 F. Supp. 3d at 1300.

In sum, Plaintiffs' claims related to the optional Bank Wire Fee are dismissed.

*The Recoverable Balance.*  According to Plaintiffs, "the non-itemized amorphous charge of 'Recoverable Balance' is misleading as it does not give consumers . . . the ability to knowledgably assess the validity of the claimed debt."  (Compl. ¶ 42 (alteration added)).  Plaintiffs further allege Defendant was fully aware and had actual knowledge that the charging of the

CASE NO. 21-62318-CR-ALTONAGA/Strauss

Recoverable Balance was in direct breach of three provisions of the Mortgages. (*See id.* ¶¶ 41, 43). Based on these assertions and a review of the Payoff Statements, Plaintiffs have plausibly alleged FDCPA and FCCPA claims arising from the Recoverable Balance.[7]

Under the FDCPA, "the issue is whether, by failing to itemize, a debt collector misleadingly conveyed the amount owed or unfairly sought to collect a debt." *Meyer*, 385 F. Supp. 3d at 1245 (citation omitted). "And this issue is a context-specific inquiry." *Id.* (quotation marks and citation omitted).

*Meyer* is instructive. There, the plaintiff mortgagee sued the defendant loan servicer under sections 1692e and 1692f of the FDCPA for failing to specify what fees were included in a "corporate advances" line item contained in a reinstatement letter. *Id.* at 1238, 1243 (quotation marks omitted). The court analyzed a line of cases that found similar non-itemized charges violated the FDCPA because they may have misrepresented the amount of attorney's fees included in the charge or whether they were included at all. *See id.* at 1244–45 (collecting cases). The court similarly held it was "*plausible* that the corporate advances line item could mislead or be unfair to the least sophisticated consumer." *Id.* at 1245 (emphasis in original).

More specifically, the plaintiff plausibly alleged a violation of the FDCPA because the least sophisticated consumer might have assumed the figure under the corporate advances line item did not include attorney's fees, late charges, or other fees associated with the debt. *See id.* So, "by failing to break down the charges," the letter "plausibly g[ave] the least sophisticated consumer in Meyer's shoes a misleading impression about the character of the debt." *Id.* (alteration added). For these reasons, the plaintiffs' FDCPA claims survived the motion-to-dismiss stage. *See id.*

---

[7] Plaintiffs do not make a FDUTPA claim with respect to the Recoverable Balance. (*See* Compl. ¶¶ 101–10).

This case is analogous.  As Plaintiffs allege, they do not have the ability to assess the validity of the debts claimed in the Recoverable Balance.  (*See* Compl. ¶ 42).  Plaintiffs thus do not know what was charged in that line item.  Moreover, a review of the Payoff Statements shows the amount of each Plaintiff's Recoverable Balance is substantial: Salter's was $51,210.41 and Joseph's was $12,538.61.  (*See* Payoff Statements 4).  The Recoverable Balance could include a multitude of different fees, including attorney's fees.  Consequently, Plaintiffs' FDCPA claims survive the Motion just as those in *Meyer* did.

Contrary to Defendant's assertion, *Coheley v. Lender Legal Services, LLC* is distinguishable as to Plaintiffs' FDCPA claims.  (*See* Reply 7–8 (citing No. 8:19-cv-185, 2019 WL 6311767, at *4–5 (M.D. Fla. Nov 25, 2019))).  In *Coheley*, the court dismissed a claim like the one here and in *Meyer* because the plaintiff did not allege the payoff amount could include attorney's fees or other costs and instead argued so in his response to the motion to dismiss.  *See* 2019 WL 6311767, at *4–5.  In contrast, Plaintiffs clearly allege they do not know what is contained in the Recoverable Balance.  (*See* Compl. ¶¶ 40, 42).  More importantly, unlike in *Coheley*, Plaintiffs attach the Payoff Statements to the Complaint rather than their Response.  *See* 2019 WL 6311767, at *5 ("Unlike Coheley's response to the motions to dismiss, however, his Complaint does not include any indication that the amounts requested in the letter could include attorney's fees or other costs.").

*Coheley* is also distinguishable as to Plaintiffs' FCCPA claim.  Under the FCCPA, a plaintiff must show "the debt collector had actual knowledge that the debt was not legitimate or the collector did not have the right to collect the debt."  *Id.* at *5 (citing *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1313 (S.D. Fla. 2017)).  In *Coheley*, the court rejected the plaintiff's FCCPA claims arising from a non-itemized charge because, "apart from

legal conclusions, he d[id] not clearly allege that Defendants had actual knowledge that the debt was not legitimate or they did not have the right to collect the debt." *Id.* (alteration added).

Plaintiffs allege that Defendant is "a sophisticated and experienced servicer" (Compl. ¶ 41) and thus knew or should have known that including the Recoverable Balance was:

> a direct breach of each of the following [Mortgage] provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the standard mortgage loan agreement permitted [Defendant] to recover "amounts disbursed" in protecting the lender's interest and rights in the standard mortgage loan agreement; (2) Paragraph 14 of the standard mortgage loan agreement prohibited [Defendant] from charging estimated fees, unauthorized fees, or excessive fees, stating '[l]ender may not charge fees that are expressly prohibited in this [Mortgage] or by Applicable Law"; and (3) Paragraph 22 of the standard mortgage loan agreement permitted [Defendant] to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans.

(*Id.* ¶ 43 (alterations added; fourth alteration in original)).  These detailed allegations regarding Defendant's knowledge further distinguish this case from *Coheley*.

More importantly, the Court simply cannot determine whether any unauthorized or excessive fees were in fact included in the Recoverable Balance.  If they were — as alleged — then Defendant likely would have had actual knowledge that the debts were illegitimate.  (*See id.*). Consequently, Plaintiffs' FCCPA claims move forward as well.

To recap, each of Plaintiffs' FDCPA and FCCPA claims arising from the non-itemized Recoverable Balance survive.

* * *

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss **[ECF No. 20]** is **GRANTED in part and DENIED in part**.  Plaintiffs' claims related to the Bank Wire Fee are dismissed.

CASE NO. 21-62318-CR-ALTONAGA/Strauss

**DONE AND ORDERED** in Miami, Florida, this 9th day of February, 2022.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record